UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
REBECCA POSTERARO,

                    Plaintiff,        MEMORANDUM & ORDER
                                       11-CV-5025(JS)(GRB)

  -against-

NORTHPORT-EAST NORTHPORT
UNION FREE SCHOOL DISTRICT,
DR. MARYLOU McDERMOTT,
individually and on behalf of
NORTHPORT-EAST NORTHPORT
UNION FREE SCHOOL DISTRICT,
BARBARA FALOTICO,
individually and as principal
on behalf of the NORTHPORT-
EAST NORTHPORT UNION FREE
SCHOOL DISTRICT, and IZZET
MERGEN, MUSIC ADMINISTRATOR
of the NORTHPORT-EAST
NORTHPORT UNION FREE SCHOOL
DISTRICT,

                    Defendants.
----------------------------------x
APPEARANCES
For Plaintiff:     Stewart Lee Karlin, Esq.
                  9 Murray Street, Suite 4W
                  New York, New York 10007

For Defendants:    Lewis R. Silverman, Esq.
                  Christopher J. Soverow, Esq.
                  369 Lexington Avenue, 8th Floor
                  New York, New York 10017

SEYBERT, District Judge:

        Plaintiff Rebecca Posteraro sued Defendants Northport-East Northport Union Free School District (the "District"), Dr. Marylou McDermott, Barbara Falotico ("Falotico"), and Izzet Mergen ("Mergen") (collectively, "Defendants") in a First

Amendment retaliation case. Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 5.) For the following reasons, this motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

The following discussion is drawn from Plaintiff's allegations, which are assumed to be true for the purposes of this motion.

From 2008 until 2011, Plaintiff was a probationary music teacher at an elementary school in the District. In February 2011, Plaintiff was onstage preparing for the opening-night performance of her students' musical production when she fell and broke her ankle. (Compl. ¶ 8.) Defendant Falotico, Plaintiff's principal, called for an ambulance but, once she realized that its arrival might disrupt the show, she called back, advised the ambulance not to respond, and said that she would call back when the performance finished. (Id. ¶ 10.) Despite her injury, Plaintiff remained at the school to direct her students in the show.

After the performance, Plaintiff and Falotico were interviewed by a reporter from Newsday. The resulting article described the events of that evening but did not reference Falotico's request to delay the medical response. (See Defs. Ex. K, Jo Napolitano, "Music Teacher Breaks Leg, Stays for

Play," Newsday, Feb. 19, 2011.) Although neither Plaintiff nor Falotico are portrayed negatively in the article, Falotico reprimanded Plaintiff for speaking with a reporter and warned that she would face disciplinary action if she spoke with the media again. (Compl. ¶¶ 14-15.)

Six weeks after the accident and the article, Plaintiff received her first negative performance evaluation (her reviews to that point had all been positive). Plaintiff claims that the bad review was inaccurate and misleading, and she also alleges that her personnel file was purged of positive evaluations. (Id. ¶¶ 16-21.)

On May 18, 2011, the day of her spring concert, Plaintiff was told that her employment was being terminated, and she was put on home assignment effective the following day. (Id. ¶ 22.) On the day after that, Falotico and Defendant Mergen said to several parents: "I assure you, this is something administration takes very seriously, the removal of a teacher is not something we take lightly, if you knew all the details of the case, you would understand and agree with us." (Id. ¶ 23.) Plaintiff claims that the parents understood this to mean that Plaintiff had committed a "serious infraction." (Id.)

## DISCUSSION

Plaintiff's Complaint asserts four claims: (1) a First Amendment retaliation claim; (2) a retaliation claim under the

New York State Constitution; (3) a claim under the New York State Human Rights Law; and (4) a claim for defamation under New York common law. The Court will recite the standard governing Defendants' motion and then address each of Plaintiff's claims in turn. First, though, it briefly rejects Defendants' invitation to abstain from jurisdiction on Younger grounds. Although Plaintiff is involved in an ongoing workers' compensation proceeding, and workers' compensation proceedings may (in certain circumstances) be reason to invoke the Younger abstention doctrine, see Liberty Mut. Ins. Co. v. Hurlbut, 585 F.3d 639, 647-48 (2d Cir. 2009), Defendants have not shown that Plaintiff's workers' compensation proceeding affords her the opportunity to litigate First Amendment issues, see id. at 647 (noting that Younger abstention is appropriate where "plaintiff has an avenue open for review of constitutional claims in the state court" (quoting Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 105 (2d Cir. 1997))).

I. Standard Governing Defendants' Motion

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than

4

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

II. Analysis

The Court addresses Plaintiff's free speech claims, her New York Human Rights Law claim, and her defamation claim in order.

A. Plaintiff's Free Speech Claims

A public employee asserting a First Amendment retaliation claim must establish that "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted)

(alteration in original). Defendants argue that (a) Plaintiff was not speaking as a citizen on a matter of public concern; and (b) Plaintiff's speech was not the reason she was denied tenure. (Defs. Br. 8-9.) At least at this stage of the litigation, these arguments are unpersuasive.

As to the nature of her speech, Plaintiff has satisfactorily alleged that she was speaking as a citizen on a matter of public concern. First, she was speaking in a private capacity in the sense that her duties as a teacher did not require her to speak with the media. See Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L. Ed. 2d 689 (2006) (assistant district attorney was not speaking as a citizen when his expressions were made "pursuant to his duties"). Although speech can be "pursuant to" public employees' official duties "even though it is not required by, or included in, the employee's job description, or in response to a request by the employer," Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 203 (2d Cir. 2010), the speech in this case--an interview with Newsday--was not indispensable to Plaintiff's role as a teacher, a "means to fulfill" her responsibilities, or "undertaken in the course of performing" her job, id. See also Garcetti, 547 U.S. at 422 (contrasting the assistant district attorney's case with a schoolteacher "whose letter to the newspaper had no official

significance and bore similarities to letters submitted by numerous citizens every day" (citing Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Ill., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).

Second, Plaintiff's speech arguably related to an issue of public concern in the sense that it was of some general societal interest. "To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983)); see Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 163 (2d Cir. 2006) (whether speech relates to a matter of public concern depends on the "content, form, and context of a given statement, as revealed by the whole record" (quoting Connick, 261 U.S. at 147-48)). This can be a broad test; for example, "a topic is a matter of public concern for First Amendment purposes if it is 'of general interest,' or 'of legitimate news interest,' or 'of value and concern to the public at the time' of the speech," Jackler, 658 F.3d at 236 (quoting City of San Diego v. Roe, 543 U.S. 77, 78, 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004)). Here, that the incident about which Plaintiff spoke was covered by Newsday suggests a general interest or legitimate news

7

interest in the matter. See Cioffi, 444 F.3d at 165 ("abundant press coverage" of a hazing incident helped show that plaintiff's letter concerning the incident was speech on a matter of public concern); see also Reuland v. Hynes, 460 F.3d 409, 418 (2d Cir. 2006) (statement made in an interview to New York magazine related to matter of public concern). In any event, Plaintiff's contribution to an article--the thrust of which was to highlight the dedication and professionalism of a local educator--arguably touched on a matter of public concern. (See Def. Ex. K.) See also Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996) (statements concerning student achievement test scores could reasonably be considered related to matters of public concern).[1]

Defendants also assert that Plaintiff cannot show a causal connection between her speech and her being denied tenure. The Court disagrees. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003) (quoting Morris v. Lindau, 196 F.3d 102, 109-

---

[1] Whether "speech is on a matter of public concern is a fact-intensive inquiry," Wroble v. Cnty. of Erie, --- F.3d ----, 2012 WL 3104529, at *4 (2d Cir. Aug. 1, 2012), and the Court leaves open the possibility of re-visiting this issue once the "whole record" is developed, supra at page 7.

10 (2d Cir. 1999)). Here, there is no dispute that Plaintiff's being denied tenure was an adverse employment action (see Defs. Br. 9); rather, Defendants argue that Plaintiff's speech had no effect on their decision to fire her (id.). Plaintiff has alleged enough to show causation. She claims that, shortly after the article, she was reprimanded for speaking with Newsday and warned that she faced disciplinary action if she spoke to the media again. (Compl. ¶¶ 14-15.)[2] And, soon after she returned to work, she received her first ever negative review. (Id. ¶ 16.) This evidence, combined with her firing, suffices to allege a causal connection. See, e.g., Mandell, 316 F.3d at 383-84. In reaching this conclusion, the Court is mindful that it may be easier (from a logistics standpoint) to fire teachers at or near the end of the school year. In this regard, the delay here is not unlike those occasionally observed in failure-to-promote cases. See id. ("It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event. In a failure to promote case, however, the opportunities for retaliation do not necessarily immediately present themselves.").

In sum, Plaintiff's First Amendment retaliation claim survives and, because it is premised on the same analysis, her

---

[2] Defendants dispute these allegations, but these disputes are best resolved on a motion for summary judgment.

New York State constitution retaliation claim survives, too, see Rotundo v. Vill. of Yorkville, No. 09-CV-1262, 2011 WL 838892, at *4 n.8 (N.D.N.Y. Mar. 4, 2011).

### B. New York State Human Rights Law

Plaintiff asserts discrimination and retaliation claims under the New York State Human Rights Law (the "NYSHRL"). This law prohibits employers from firing employees on the basis of, among other things, a disability. N.Y. EXEC. L. § 296(a). To state a prima facie discrimination claim under this provision, a plaintiff must show "(1) that she is an individual with a disability within the meaning of the statute; (2) that [Defendant] is subject to the [NYSHRL] and had notice of the disability; (3) that she was otherwise qualified to perform the essential functions of her position, with or without reasonable accommodation; and (4) that she was fired because of her disability." Schlenger v. Fid. Emp'r Svcs. Co., 785 F. Supp. 2d 317, 354 (S.D.N.Y. 2011) (quoting Fall v. N.Y. State United Teachers, 289 F. App'x 419, 420 (2d Cir. 2008)); see also Thide v. N.Y. State Dep't of Transp., 27 A.D.3d 452, 453, 811 N.Y.S.2d 418 (2d Dep't 2006). Defendants concede that Plaintiff's broken ankle is a "disability" within the meaning of the NYSHRL (Defs. Br. 11), and there is no dispute that Defendants were aware of her broken ankle. Instead, Defendants argue that Plaintiff has not adequately alleged that she was fired because of her

10

disability. (Id.) The Court agrees. Unlike with her free speech claims, Plaintiff does not allege any facts suggesting that a broken ankle in February led to her firing in May. Schlenger, 785 F. Supp. 2d at 356 (temporal proximity not enough to state disability discrimination claim under state law; plaintiff "must point to facts that suggest the termination was motivated, at least in part, by animus based on her alleged disability").

Plaintiff's retaliation claim under the NYSHRL is also dismissed. Among other things, the Complaint does not allege that Plaintiff was engaged in protected activity. See, e.g., Grovesteen v. N.Y. State Pub. Emps. Fed'n, AFL-CIO, 83 A.D.3d 1332, 1334, 921 N.Y.S.2d 700, 702 (3d Dep't 2011).

C. Defamation

Finally, Plaintiff claims that Falotico and Mergen defamed her by telling a group of parents that "I assure you this is something administration takes very seriously, the removal of a teacher is not something we take lightly, if you knew all the details of the case, you would understand and agree with us." (Compl. ¶ 36.) To plead a defamation case, a claimant must allege "(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special

harm or constituting slander per se; and (7) not protected by privilege." TC v. Valley Cent. Sch. Dist., 777 F. Supp. 2d 577, 603 (S.D.N.Y. 2011); see also, e.g., Dillon v. City of N.Y., 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999). Defendants argue that (a) Plaintiff has not plead the time, place, and manner of the defamatory statements or that they were made with "actual malice"; (b) truth is a defense; (c) the statement was a non-actionable opinion; and (d) Plaintiff has not pled either defamation per se or special damages.

Defendants' time, place, and manner argument is unpersuasive. Plaintiff alleges the date, the speakers, the words they used, and the people to whom the statement was made. See Epifani v. Johnson, 65 A.D.3d 224, 234, 882 N.Y.S.2d 234, 243 (2d Dep't 2009) (concluding that plaintiff alleged time, place, and manner where the complaint set forth the statement, the listeners, and the date). Defendants' argument that Plaintiff failed to allege a culpable mental state is belied by the Complaint. (See Compl. ¶ 37.)

Defendants' truth and privilege arguments are also unavailing, at least at this stage of the litigation. See Garcia v. Puccio, 17 A.D.3d 199, 201, 793 N.Y.S.2d 382, 383-84 (1st Dep't 2005) (noting that "a claim of truth or substantial truth, like a claim of qualified privilege, is an affirmative defense"); accord Liberman v. Gelstein, 80 N.Y.2d 429, 437, 605

N.E.2d 344, 349, 590 N.Y.S.2d 857, 862 (1992) (noting that qualified common interest privilege dissolves if plaintiff can show that defendant spoke with malice).

Whether the alleged statement is actionable merits a closer discussion. Only statements of fact, capable of being proven false, can be defamatory. See Russell v. Davies, --- N.Y.S.2d ----, 2012 WL 2817473, at *1 (2d Dep't July 11, 2012). "In distinguishing between facts and opinion, the factors the court must consider are (1) whether the specific language has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the context in which the statement appears signals to readers that the statement is likely to be opinion, not fact." Id.; see also Gross v. New York Times Co., 82 N.Y.2d 146, 152-3, 623 N.E.2d 1163 (1993). Additionally, so called "mixed opinions" are actionable, too, at least where "they imply that the opinions are based upon facts unknown" to the listeners. Glazier v. Harris, 95 A.D.3d 538, 539, 944 N.Y.S.2d 75, 76 (1st Dep't 2012); see also Steinhilber v. Alphonse, 68 N.Y.2d 283, 289-90, 501 N.E.2d 550, 55, 508 N.Y.S.2d 901, 904 (1986) ("The actionable element of a 'mixed opinion' is not the false opinion itself--it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking."). The

alleged statement in this case falls into this category: it left the listeners with the impression that the speakers knew facts--harmful to Plaintiff--that the listeners did not. (See Compl. ¶ 36 ("[I]f you knew all the details of the case, you would understand and agree with [Plaintiff's firing].").  See also Glazier, 944 N.Y.S.2d at 76 (statement was actionable because "unmistakable import of Harris's statements is that plaintiffs engaged in inappropriate conduct").

Defendants' last argument is that Plaintiff has not alleged either defamation per se or special damages.  To the extent that Plaintiff relies on the "professional reputation" prong of the defamation per se analysis, Defendants maintain that her case falls within the "single instance" exception. Under this rule, "language charging a professional [person] with ignorance or mistake on a single occasion only and not accusing him [or her] of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded."  Porcari v. Gannett Satellite Info. Network, Inc., 50 A.D.3d 993, 994, 856 N.Y.S.2d 217, 219 (2d Dep't 2008) (quoting Nov. v. Time Inc., 13 N.Y.2d 175, 178, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963)) (alterations in Porcari).  The Court disagrees.  Read fairly, the alleged statement suggests more than simple ignorance or mistake; rather, it hints at "intolerable commission of highly

14

unprofessional conduct." Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 437, 630 N.Y.S.2d 18, 23 (1st Dep't 1995); see also, e.g., Rutman v. Giedel, 67 A.D.2d 662, 662, 411 N.Y.S.2d 960, 961 (2d Dep't 1979) (single-instance rule was inapplicable to alleged statement that police officer was drunk on duty; this conduct "shows such a lack of character as would render him unfit for his position").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiff may amend her Complaint to re-plead her NYSHRL claims within twenty-one (21) days. Inasmuch as she mounted virtually no colorable opposition to Defendants' arguments that her NYSHRL retaliation claim should be dismissed, Plaintiff would do well to think carefully before asserting that claim again.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  10 , 2012
       Central Islip, New York